# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:16-CV-00708-RJC-DSC

| | |
|---|---|
| SUMMER AMMARELL,<br><br>    Plaintiff,<br><br>v.<br><br>MEGAN FRANCE,<br><br>    Defendant. | **MEMORANDUM AND<br>RECOMMENDATION** |

**THIS MATTER** is before the Court on "Defendants[sic] Motion to Dismiss," Doc. 11, filed January 10, 2017, and the parties' associated briefs and exhibits, Docs. 12 and 14.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>denied</u>, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 2016, Plaintiff filed this action in Mecklenburg County Superior Court against Defendant Megan France alleging claims under North Carolina common law for alienation of affection, criminal conversation, and intentional and negligent infliction of emotional distress all based upon Defendant's affair with Plaintiff's husband. <u>See generally</u>, Compl., Doc. 1, Ex 1. Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant timely removed the action to this Court based

upon diversity of citizenship. See 28 U.S.C. § 1332; Doc. 1. Removal appears proper and no party has challenged the Court's jurisdiction.

Defendant filed a Motion to Dismiss the criminal conversation and alienation of affection claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant argues that these causes of action violate the Due Process Clause of the United States Constitution and should be dismissed. Defendant also argues that the cause of action for alienation of affection impermissibly infringes upon her First Amendment right of free speech.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Due Process Claim

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The North Carolina Constitution provides similar protections. N.C. CONST. art. I, § 19.

To establish a common law claim for alienation of affection, a plaintiff must prove "(1) [t]hat [she and her husband] were happily married, and that a genuine love and affection existed between them; (2) that the love and affection so existing was alienated and destroyed; [and] (3)

that the wrongful and malicious acts of the defendant[ ] produced and brought about the loss and alienation of such love and affection." McCutchen v. McCutchen, 624 S.E.2d 620, 623 (N.C. 2006).  To establish a claim for criminal conversation, a plaintiff must prove "the actual marriage between the spouses and sexual intercourse between defendant and the plaintiff's spouse during the coverture." Johnson v. Pearce, 557 S.E.2d 189, 190 (N.C. App. 2001).

Defendant argues that these torts violate the Due Process Clause by imposing an impermissible civil penalty on her free exercise of the right to personal autonomy, including her right to private intimate relations between consenting adults.

The Supreme Court has articulated two critical factors in identifying a fundamental right under the Due Process Clause: "[f]irst, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed'. Second, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (citations omitted).

Defendant relies on the Supreme Court's decision in Lawrence v. Texas, 539 U.S. 558 (2003).  In Lawrence, "the question before the Court [was] the validity of a Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct." Id. at 562. The Supreme Court concluded that "the case should be resolved by determining whether the petitioners were free as adults to engage in the private conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment to the Constitution." Id. at 564.  In its Due Process analysis, the Supreme Court reviewed its previous holdings on the right to privacy in an attempt to define the nature and scope of the right at issue. Specifically, the Court considered

Griswold v. Connecticut, 381 U.S. 479 (1965), Eisenstadt vs. Baird, 405 U.S. 438 (1972), Roe v. Wade, 410 U.S. 113 (1973), and Carey v. Population Servs. Int'l., 431 U.S. 678 (1997). The Supreme Court concluded that the right to privacy is not limited to married adults.

Defendant argues that Lawrence extends the right to privacy to include the right to engage in an intimate relationship with a married person. This Court disagrees. The right to engage in an extra-marital relationship is not a liberty which is deeply rooted in our Nation's history, implicit in our concept of ordered liberty, nor would justice cease to exist if that conduct is regulated. In fact, the only fundamental right at issue here is that of Plaintiff and her spouse to marry. That right was the subject of Obergefell v. Hodges, 135 S. Ct. 2584 (2015).

In Obergefell, the Supreme Court held that "the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same sex may not be deprived of that right and that liberty." Obergefell, 135 S. Ct. at 2604. Marriage is "'the foundation of the family and of society, without which there would be neither civilization nor progress.'" Id. at 2601 (citations omitted). In describing marriage as a fundamental right, Justice Kennedy found "[t]he right to personal choice regarding marriage is inherent in the concept of individual autonomy." Id. at 2599. Second, marriage "supports a two person union unlike any other in its importance to the committed individuals." Id. Third, "it safeguards children and families and thus draws meaning from related rights of childrearing, procreation, and education." Id. at 2600. Fourth, "this Court's cases and the Nation's traditions make clear that marriage is a keystone of the Nation's social order." Id. at 2601.

Not only is the right to marry fundamental but the courts of North Carolina have repeatedly recognized that there exists a "fundamental right to exclusive sexual intercourse between spouses." Johnson v. Pearce, 557 S.E.2d 189, 190 (N.C. App. 2001)(citation omitted). See also, Scott v.

Kiker, 297 S.E.2d 142, 145 (N.C. App. 1982). The North Carolina Court of Appeals has stated that "[d]ue process is a critical component of our constitutional foundation. It is an essential protection, one which should be carefully and precisely applied rather than devalued through random use as a residual depository. Due process is not an endless drama encumbered only by the limits of our collective imagination." Rhyne v. K-Mart Corp., 562 S.E.2d 82, 91 (N.C. App. 2002).

"Where a fundamental right does not exist, courts review government action under the rational basis standard." Stevens v. Holder, 966 F. Supp. 2d 622, 631 (E.D. Va. 2013) (citation omitted). Defendant has the burden of showing that the law at issue is not rationally related to a legitimate state interest. Since this Court concludes that the right to engage in extra-marital relations is not a fundamental right, Defendant must show that the causes of action for alienation of affection and criminal conversation do not rationally relate to a legitimate state interest. Defendant has failed to meet this burden.

The rational basis test was used to strike down the anti-sodomy statute in Lawrence. The Supreme Court held that "[t]he Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." Lawrence, 539 U.S. at 578. The Supreme Court has now held that "same-sex couples have the same right as opposite-sex couples to enjoy intimate association." Obergefell v. Hodges, 135 S. Ct. 2584, 2600 (2015). However, the protections afforded the petitioners in Lawrence are not absolute. The Supreme Court cautioned that a state may regulate relationships amongst people stating, "This, as a general rule, should counsel against attempts by the State, or a court, to define the meaning of the relationship or to set its boundaries absent injury to a person or abuse of an institution the law protects." Lawrence, 539 U.S. at 567. North Carolina's actions for alienation of affection and criminal conversation prevent injury to a spouse as well as abuse of the constitutionally protected institution of marriage.

North Carolina has recognized the constitutionality of restrictions on the limited liberty interest identified in Lawrence. See State v. Whiteley, 616 S.E.2d 576 (N.C. App. 2005). In Whiteley, the North Carolina Court of Appeals recognized that "[t]he Supreme Court, however, did not hold that this Fourteenth Amendment liberty interest in personal relations was without limits." Id. at 579. The Court noted that "Lawrence clearly indicates that regulation of particular sexual acts is permissible when legitimate state interests justify intrusion into the personal and private life of the individual." Id. at 580. By using the words "legitimate state interest," the North Carolina Court of Appeals adopted the rational basis test as the standard of review.

North Carolina has a legitimate interest in preserving the monogamous tradition of marriage. The causes of action for alienation of affection and criminal conversation protect that interest by holding accountable the individual who wrongfully disrupts the protected institution of marriage. Other provisions of North Carolina law likewise protect the institution of marriage. For example, North Carolina mandates a one year separation in order to file for divorce. See N.C.G.S. § 50-6. North Carolina law makes adultery a class 2 misdemeanor. N.C.G.S. § 14-184. Further, marriage is protected by the state's police power with provisions governing licensing, solemnization, age, and capacity to marry. See generally, N.C.G.S. §§ 51-1 through -21. In North Carolina spouses may not be compelled to testify against each other if that testimony would disclose confidential communications. See N.C.G.S. § 8-57(c). Additionally, "attorneys representing a client in a divorce proceeding may not use contingent fee contracts since they tend to promote divorce and discourage reconciliation." Cooper v. Shealy, 537 S.E.2d 854, 858 (2000)(citations omitted).

Not only do these protections guard the sanctity of marriage, they afford certain benefits to those individuals entering into the institution. In Obergefell, the Supreme Court acknowledged these benefits:

> Indeed, while the States are in general free to vary the benefits they confer on all married couples, they have throughout our history made marriage the basis for an expanding list of governmental rights, benefits, and responsibilities. These aspects of marital status include: taxation; inheritance and property rights; rules of intestate succession; spousal privilege in the law of evidence; hospital access; medical decisionmaking authority; adoption rights; the rights and benefits of survivors; birth and death certificates; professional ethics rules; campaign finance restrictions; workers' compensation benefits; health insurance; and child custody, support, and visitation rules.

135 S. Ct. 2584, 2601 (2015).

Claims for alienation of affection and criminal conversation comprise part of the framework for the protection of marriage under North Carolina law. The North Carolina Court of Appeals has repeatedly held that only the General Assembly and the North Carolina Supreme Court have the "the authority to abrogate or modify a common law tort." Johnson, 557 S.E.2d at 191. When presented with the opportunity to do so, the North Carolina General Assembly failed to pass legislation abolishing these claims in 2007. See H.B. 681, 2007 Gen. Assem., Reg. Sess. (N.C. 2007), available at http://www.ncga.state.nc.us/Sessions/2007/Bills/House/PDF/H681v1.pdf ; S.B. 1503, 2007 Gen. Assem., Reg. Sess. (N.C. 2007), available at http://www.ncleg.net/Sessions/2007/Bills/Senate/PDF/S1503v1.pdf. The General Assembly rejected similar legislation in 2009. See H.B. 1123, 2009 Gen. Assem., Reg. Sess. (N.C. 2009), available at http://www.ncleg.net/Sessions/2009/Bills/House/PDF/H1123v1.pdf.

North Carolina has long held a legitimate state interest in protecting marriage and the "fundamental right to exclusive sexual intercourse between spouses." Johnson, 557 S.E.2d at 190.

Defendant has failed to show that the provisions of law at issue are not rationally related to this legitimate state interest. Consequently, the Court respectfully recommends that Defendant's Motion to Dismiss these claims for violation of the Due Process Clause be denied.

### C. First Amendment Claim

The First Amendment to the United States Constitution provides that: "Congress shall make no law . . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. Defendant advances the dubious proposition that the cause of action for alienation of affection impermissibly infringes upon her First Amendment right of free speech. The Court disagrees.

"[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." United States v. O'Brien, 391 U.S. 367, 377 (1968). As discussed in detail above, North Carolina has a legitimate state interest in protecting the fundamental right of marriage.

The Supreme Court has recognized that "every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities." Arcara v. Cloud Books, Inc., 478 U.S. 697, 706 (1986). In Arcara, the Supreme Court considered whether closure of an adult bookstore where acts of prostitution were occurring violated the petitioner's First Amendment rights by restricting the sale of books. The Court stated that "we have not traditionally subjected every criminal and civil sanction imposed through legal process to 'least restrictive means'

scrutiny simply because each particular remedy will have some effect on the First Amendment activities of those subject to sanction." Id.

The alienation of affection law establishes civil liability for conduct-the wrongful and malicious acts that result in an alienation of love and affection between spouses-and does not implicate speech. Consequently, the Court respectfully recommends that Defendant's Motion to Dismiss the alienation of affection claim for violation of her First Amendment right of free speech be denied.

## III. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Complaint, Doc. 11, be DENIED.

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED.**

Signed: February 14, 2017

*[signature]*

David S. Cayer
United States Magistrate Judge