IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:16-CV-00708-RJC-DSC

| | |
|---|---|
| SUMMER AMMARELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| MEGAN FRANCE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** comes before the Court on Megan France's Motion to Dismiss, (Doc. No. 11), and the Memorandum in Support, (Doc. No. 12); Summer Ammarell's Opposition to Defendant's Motion, (Doc. No. 14); the Magistrate Judge's Memorandum and Recommendation ("M&R"). (Doc. No. 15), recommending that the Court deny France's Motion to Dismiss; France's Objections to the M&R (Doc. No. 16); and Ammarell's Response to France's Objections to the Magistrate Judge's M&R (Doc. No. 20). A hearing was held on February 28, 2018, and the motions are ripe for the Court's consideration.

Plaintiff claims, under state law, damages for impairment of marriage and related injury. Defendant resists, claiming that North Carolina's "heart balm" statutes are unconstitutional. As will be shown, although Defendant's motion to dismiss is cast in terms of a constitutional challenge, it is at bottom a policy critique – the statutes at issue are unwise, outdated and ineffectual. Those arguments rest on policy grounds and are fodder for state legislative change; they are not grounds for

dismissal by an unelected federal judge. For the reasons set forth, this Court finds that the tort claims for alienation of affection and criminal conversation pass constitutional muster.

I. BACKGROUND

For the purpose of a motion to dismiss, the Court must accept the factual allegations of Summer Ammarell's ("Plaintiff's") complaint as true and, in doing so, construe allegations in the light most favorable to her. Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010). With this standard in mind, the Court finds plaintiff has alleged sufficient facts to support her claims of alienation of affection and criminal conversion.

On February 25, 2012, Plaintiff married Ryan Ammarell in Alabama. (Doc. No. 1-1 ¶¶1, 28). As she tells it, Plaintiff's marriage was one of genuine love and affection. (Id. ¶10). The couple had a child and Mr. Ammarell owned a business in Mecklenburg, North Carolina, where he frequently traveled to from his home in Alabama. (Id. at ¶¶1, 11, 28). It was in North Carolina in December 2015, however, that Mr. Ammarell met Megan France ("Defendant") and began to forge a second life, resulting in an affair. (Id. ¶12). Mr. Ammarell and Defendant were intimate when together and exchanged explicit photographs and texts when apart. (Id. ¶14).

The affair eventually came to light in May of 2016 when Defendant called Plaintiff and described the sexual relationship she had established with Mr. Ammarell. (Id.). She apparently sent Plaintiff the texts and photographs to prove it. (Id. at ¶14).

2

Defendant had planned a future with Mr. Ammarell. She scheduled an appointment to remove her birth control device in the hopes of bearing Mr. Ammarell's child. (Id. ¶17). She purchased a residence and car for Mr. Ammarell to use when in North Carolina. (Id. ¶18). She offered a total of $1,000,000 to Mr. Ammarell to leave his wife; and contemplated offering another $100,000 to Plaintiff if she was willing to walk away from her marriage. (Id.).

Plaintiff's happy marriage began to crumble as a result. Mr. Ammarell suffered a mental breakdown of sorts, fueling episodes of domestic violence and triggering proceedings in which Plaintiff sought primary custody of their child in Alabama. (Id. ¶28). Plaintiff now seeks redress for the damage she alleges Defendant caused by asserting North Carolina common law causes of action for alienation of affection and criminal conversation. Defendant argues that these causes of action are unconstitutional as they target her liberty interests in engaging in private consensual sexual conduct and violate her First Amendment rights to free speech and freedom of association.

## II. STANDARD OF REVIEW

This Court assigned Defendant's Motion to Dismiss to a Magistrate Judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) and (B). The resulting M&R recommended denying the motion, and Defendant timely objected. The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(C); Fed. R. Civ. P.

72(b)(3); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). A district judge is responsible for the final determination and outcome of the case, and accordingly this Court has conducted a comprehensive review of the M&R.

To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id.

## III. DISCUSSION

Plaintiff's Complaint alleges the North Carolina common law causes of action of criminal conversation and alienation of affection. The State provides these causes of action to allow spouses injured by their partners' unfaithfulness to bring actions against third party interlopers. Under criminal conversation, Plaintiff must show "[an] actual marriage between the spouses and sexual intercourse between defendant and the plaintiff's spouse during the coverture." Nunn v. Allen, 574 S.E.2d 35, 43 (N.C. Ct. App. 2002) (quoting Brown v. Hurley, 477 S.E.2d 234 (N.C. Ct. App. 1996)). Under alienation of affection, Plaintiff must prove:

> (1) that [she and her husband] were happily married, and that a genuine love and affection existed between them; (2) that the love and affection so existing was alienated and destroyed; [and] (3) that the wrongful and malicious acts of the defendant[] produced and brought about the loss and alienation of such love and affection.

McCutchen v. McCutchen, 624 S.E.2d 620, 623 (N.C. 2006) (quoting Litchfield v. Cox, 266 N.C. 622, 623, 146 S.E.2d 641, 641 (1966)).

4

In her Motion to Dismiss, Defendant argues that criminal conversation and alienation of affection are unconstitutional because: (1) these claims violate the Due Process Clause; and (2) the alienation of affection claim impermissibly infringes on Defendant's First Amendment rights. (Doc. No. 12 at 3, 13). The Magistrate Judge was not persuaded and recommended that Defendant's Motion to Dismiss be denied. (Doc. No. 15).

Defendant's tenfold objections to the M&R include errors in: (1) "applying a pure rational basis scrutiny to the Defendant's 14th Amendment claim when [Lawrence v Texas, 539 U.S. 558 (2003),] and subsequent authority have applied a higher standard of review often termed a 'heightened rational basis scrutiny'"; (2) "improperly construing Lawrence to have exceptions in cases of injury to others and involving married couples where Lawrence applies to all instances of autonomous private consensual sexual conduct"; (3) "asserting without statutory or legislative support that the tort of alienation of affections and criminal conversation are intended to, and actually do, protect marriage"; (4) "asserting that 'monogamy is inextricably woven into the fabric of our society' and using that as a justification for an inherently irrational morals legislation/common law tort"; (5) "asserting that Alienation of Affections doesn't implicate speech"; (6) "asserting that 'marriage is the keystone of the Nation's social order,' and that 'marriage is the foundation of the family and of society, without which there would be neither civilization nor progress'"; (7) "characterizing the right to private consensual sexual conduct as 'the right to engage in extra marital relations'"; (8) "asserting that there is a 'fundamental right

5

to exclusive sexual intercourse between spouses.'"; (9) "claiming that the torts of alienation of affection and criminal conversation have some type of deterrent effect on society where no such effect has ever been shown to exist"; and (10) "failing to consider the Defendant's First Amendment analysis regarding the overbroad nature of the alienation of affections tort and suggesting that this constitutional deficiency can be cured by allowing a jury to find that the Defendant's protected speech was 'malicious.'" (Doc. No. 16 at 1–2).

The Court agrees with the Magistrate Judge's recommendation. Alienation of affection and criminal conversation do not violate Defendant's substantive due process rights. Supreme Court precedent does not vitiate State legislative attempts to regulate the type of private conduct at issue here. Furthermore, the cause of action for alienation of affection does not violate Defendant's First Amendment rights because of the substantial government interests involved in this case justify any incidental effects on Defendant's freedom of speech.

A. <u>The Causes of Action for Alienation of Affection and Criminal Conversation Do Not Violate Defendant's Due Process Rights.</u>

Fundamental to Defendant's attack on the constitutionality of alienation of affection and criminal conversation is the interpretation of the United States Supreme Court case <u>Lawrence v. Texas</u>. In that case, the Supreme Court recognized a substantive due process right to intimate same-sex conduct in a private place pursuant to liberty interests grounded in the Fourteenth Amendment. 539 U.S. at

6

578. In doing so, the Court struck down a Texas law criminalizing same-sex conduct, concluding that it furthered no legitimate state interest. Id. at 560.

Defendant argues that the right to private intimate conduct in Lawrence protects her intimate conduct with Mr. Ammarell. (Doc. No. 12 at 5). The Magistrate Judge disagreed. First, the Magistrate Judge found that the Supreme Court used the rational basis test in Lawrence to strike down the Texas law. (Doc. No. 15 at 6). Then, the Magistrate Judge used the same test to analyze Defendant's conduct. Strict scrutiny was found to be inapplicable because such a test is reserved for fundamental rights. The Magistrate Judge concluded that an extra-marital relationship is not a liberty interest deeply rooted in our nation's history, implicit in our concept of order liberty, nor would justice cease to exist if that conduct is regulated. (Id. at 5). Applying rational basis review, the Magistrate Judge concluded that the State furthered a legitimate interest in protecting the institution of marriage. (Id. at 5–6). Therefore, the Magistrate Judge found no violation to Defendant's due process liberty interests. (Id. at 7).

Defendant objects to the Magistrate Judge's interpretation of Lawrence. She posits that the Supreme Court used some standard above rational basis scrutiny and that this Court should do the same. (Doc. No. 12 at 8–13; 16 at 4–6). Under this heightened scrutiny, Defendant argues that alienation of affection and criminal conversation violate substantive due process liberty rights because they are not narrowly tailored and fail to achieve a legitimate or compelling State interest. (Doc. Nos. 12 at 8–9; 16 at 8). In effect, Defendant argues that this heightened form of

7

scrutiny widens this Court's focus to include not just the ends sought by the State, but also the means used to achieve them.

The Supreme Court's standard for analyzing substantive due process claims either relies on rational basis or strict scrutiny review, depending upon whether the case involves a fundamental right. See Washington v. Glucksberg, 521 U.S. 702, 728 (1997) (finding no fundamental liberty interest in assisted suicide). If there exists a fundamental right—a right "deeply rooted in this Nation's history and tradition"—any infringement by the government must be "narrowly tailored to serve a compelling state interest." Id. at 721. Otherwise, government regulation of any other liberty interest must simply "be rationally related to legitimate government interests." Id. at 728.

This approach was not altered by Lawrence. There, the Court declared that "[t]he Texas statute further[ed] no legitimate state interest which can justify its intrusion into the individual's personal and private life." Lawrence, 539 U.S. at 560. By omitting the terms "narrowly tailored" or "compelling state interest," the Supreme Court did not engage in a strict scrutiny analysis.[1]

This Court will not apply a higher standard than the Supreme Court did in Lawrence. Instead the outcome determinative focus is on the two caveats that the Supreme Court raised in Lawerence. The liberty interests extend only to those cases

---

[1] As Justice Scalia wrote in his dissent, "nowhere does the Court's opinion declare that homosexual sodomy is a 'fundamental right' under the Due Process Clause; nor does it subject the Texas law to the standard of review that would be appropriate (strict scrutiny) if homosexual sodomy were a 'fundamental right.'" Lawrence, 539 U.S. at 586 (Scalia, J., dissenting).

8

where private, intimate conduct is regulated without: (1) injury to a person; or (2) "abuse of an institution the law protects." Lawrence, 539 U.S. at 567; see also State v. Whiteley, 616 S.E. 2d 576, 579 (N.C. Ct. App. 2005) (interpreting Lawrence and recognizing that "[t]he Supreme Court … did not hold that this Fourteenth Amendment liberty interest in personal relations was without limits."). Therefore, States may regulate the intimate conduct between two people if that conduct injures another person or abuses an institution the law protects. The Court finds precisely this—the causes of action for criminal conversation and alienation of affection further a legitimate state interest and fall comfortably within Lawrence's caveats.

To begin with, the sexual conduct alleged in this case clearly implicates injury to a person: Plaintiff. The Supreme Court of North Carolina has previously recognized that criminal conversation addressed the emotional injury felt by one spouse after the other engaged in sexual conduct with a third party. In Misenheimer v. Burris, the Court affirmed the civil injury in cases involving criminal conversation and, quoting Blackstone, stated "surely there can be no greater." 637 S.E.2d 173, 176 (N.C. 2006) (quoting William Blackstone, 3 Commentaries *139).

Equally important, the sexual conduct alleged in this case abuses an institution which the law protects: marriage. In 1888, the Supreme Court stated that marriage had long been "a great public institution, giving character to our whole civil polity." Maynard v. Hill, 125 U.S. 190, 213 (1888). And it remains so today. As Justice Kennedy wrote in Obergefell v. Hodges:

9

> From their beginning to their most recent page, the annals of human history reveal the transcendent importance of marriage… The centrality of marriage to the human condition makes it unsurprising that the institution has existed for millennia and across civilizations. Since the dawn of history, marriage has transformed strangers into relatives, binding families and societies together. Confucius taught that marriage lies at the foundation of government. This wisdom was echoed centuries later and half a world away by Cicero, who wrote, 'The first bond of society is marriage; next, children; and then the family.' There are untold references to the beauty of marriage in religious and philosophical texts spanning time, cultures, and faiths, as well as in art and literature in all their forms.

135 S. Ct. 2584, 2595 (2015).[2]

In terms of how our Nation has treated marriage, "[t]he States have contributed to the fundamental character of marriage by placing it at the center of many facets of the legal and social order." Id. at 2590. North Carolina is no exception. Here, the law has long respected a policy that "within reason favors maintenance of the marriage." McCutchen, 624 S.E.2d at 624; see also Nun, 574 S.E.2d at 43 (stating

---

[2] The opinions of the dissenting justices in Obergefell mirror this understanding of marriage. Chief Justice Roberts wrote, "[Marriage] forms 'the foundation of the family and of society, without which there would be neither civilization nor progress.'" 135 S. Ct. at 2614 (Roberts, C.J., dissenting) (quoting Maynard v. Hill, 125 U.S. 190, 211 (1888)). The Supreme Court, Chief Justice Roberts recalled, previously "described marriage as 'fundamental to our very existence and survival'…." Id. (quoting Loving v. Virginia, 388 U.S. 1, 12 (1967))

Justice Scalia described marriage as "an institution as old as government itself, and accepted by every nation in history." Id. at 2630 (Scalia, J., dissenting).

Justice Thomas quoted philosopher James Wilson for the proposition "that to the institution of marriage the true origin of society must be traced." Id. at 2636 (Thomas, J., dissenting) (quoting J. WILSON, LECTURES ON LAW, IN 2 COLLECTED WORKS OF JAMES WILSON 1068 (K. Hall and M. Hall eds. 2007)).

Justice Alito quoted his dissenting opinion in United States v. Windsor, 570 U.S. 744, 810 (2013), where he recognized that "[t]he family is an ancient and universal human institution." Id. at 2642 (Alito, J., dissenting)).

that criminal conversation "is based upon 'the fundamental right to exclusive sexual intercourse between spouses."). For example, as the Magistrate Judge pointed out:

> North Carolina mandates a one year separation in order to file for divorce. See N.C.G.S. § 50-6. North Carolina law makes adultery a class 2 misdemeanor. N.C.G.S. § 14-184. Further, marriage is protected by the state's police power with provisions governing licensing, solemnization, age, and capacity to marry. See generally, N.C.G.S. §§ 51-1 through -21. In North Carolina spouses may not be compelled to testify against each other if that testimony would disclose confidential communications. See N.C.G.S. § 8-57(c). Additionally, "attorneys representing a client in a divorce proceeding may not use contingent fee contracts since they tend to promote divorce and discourage reconciliation." Cooper v. Shealy, 537 S.E.2d 854, 858 (2000)(citations omitted).

(Doc. No. 15 at 7). The fundamental place held by the institution of marriage justifies the protection afforded here.

Defendant presents several arguments to show that North Carolina's causes of action for criminal conversation and alienation of affection are neither narrowly tailored nor rationally related to the protection of marriage.[3] Defendant's arguments, however, cut against the conclusion she advocates. First, Defendant points out that North Carolina's divorce rate ranked fifth in the United States. (Doc. No. 12 at 8). This statistic justifies North Carolina's retention of causes of action for alienation of affection and criminal conversation. The divorce rate is high and the State may combat that crisis by exercising its power to reduce it, such as penalizing adultery.

---

[3] At the outset, though, it is worth noting Defendant's inaccurate application of the legal principles at play. For example, Defendant uses language such as "compelling" and "narrowly tailored" in an instance where fundamental rights and strict scrutiny review are not implicated. See (Doc. Nos. 12 at 8; 16 at 7). The Supreme Court has never held that adultery is a fundamental right.

11

Second, Defendant cites N.C. GEN. STAT. §50-6, which allows couples in North Carolina to dissolve a marriage after one year of separation. (Id. at 9). Defendant states that this "no-fault divorce" statute shows that North Carolina has "legislated the amount of protection for marriages," neither encouraging nor discouraging extra-marital affairs. (Id.). This argument is unpersuasive. As the term itself implies, there is a level of consent present in no-fault divorces. Alienation of affection and criminal conversation, on the other hand, target fault and the lack of consent that harm a happy marriage. Theses causes of action aim to protect marriages where partners were *together*. It is rational for a State to penalize conduct that alienates affection within a happy marriage while at the same time providing remedies where parties separate and head for divorce.

Third, Defendant points to the legislature's 2009 amendment of alienation of affection and criminal conversation. (Doc. No. 16 at 8). North Carolina law states, "No act of the defendant shall give rise to a cause of action for alienation of affection or criminal conversation that occurs after the plaintiff and the plaintiff's spouse physically separate with the intent of either the plaintiff or plaintiff's spouse that the physical separation remain permanent." N.C. GEN. STAT. §52-13(a). The same reasoning behind the State's "no-fault" divorce policy applies here. The legislature's amendment only emphasizes that criminal conversation and alienation of affection are specifically tailored to instances of fault—instances where a party was injured and marriage was abused as an institution. In fact, it would be the absence—not

presence—of such an amendment that could advance Defendant's argument that alienation of affection and criminal conversation are not narrowly tailored.[4]

The bottom line is this: Lawrence does not protect all "private consensual sexual conduct",[5] from state regulation—especially when that conduct knowingly and maliciously destroys the happy marriage of another or injures a party.

B. Plaintiff's Claims for Alienation of Affection Do Not Infringe upon Defendant's Freedom of Speech.

The Magistrate Judge also properly concluded that Plaintiff's alienation of affection claim does not infringe on Defendant's First Amendment rights to freedom of speech or her freedom of association.

1. Freedom of Speech

"Congress shall make no law abridging the freedom of speech..." U.S. CONST. amend. I. These words comprise a fundamental freedom guaranteed in the Constitution. Although cherished, the freedom of speech is not absolute. In United States v. O'Brien, where the Defendant burned a draft card, the Supreme Court rejected "the view that an apparently limitless variety of conduct can be labeled

---

[4] This legislative amendment also demonstrates the viability of the democratic process to affect the changes the Defendant wishes the Judiciary to impose by fiat. See Obergefell, 135 S.Ct. at 2611 ("But this Court is not a legislature. Whether same-sex marriage is a good idea should be of no concern to us. Under the Constitution, judges have power to say what the law is, not what it should be. The people who ratified the Constitution authorized courts to exercise 'neither force nor will but merely judgment.'") (Roberts, C.J., dissenting) (quoting THE FEDERALIST NO. 78, p. 465 (C. Rossiter ed. 1961) (A. Hamilton)).

[5] Defendant used this term where the Magistrate Judge used "extra-marital" for what historically has been considered "adultery."

'speech' whenever the person engaging in the conduct intends thereby to express an idea." 391 U.S. 367, 376 (1968). Rather, when one course of conduct implicates both speech and non-speech elements, an important government interest regulating the non-speech element of that conduct may justify incidental limitations on the freedom of speech. Id. at 376. In O'Brien, the Supreme Court found it clear that incidental effects on First Amendment rights from a government regulation were justified if it "furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." Id. at 377.

Here, the necessary conduct to establish a claim for alienation of affection are the wrongful and malicious acts of a defendant which produced the loss and alienation of love and affection in a marriage. McCutchen, 624 S.E. 2d at 623. As discussed above, the value assigned to marriage throughout our Nation's history, and indeed the history of the world, undergirds North Carolina's legitimate and substantial interest in protecting marriage as an institution

Furthermore, North Carolina's pursuit of this interest through alienation of affection statutes is unrelated to the suppression of free expression. Alienation of affection does not target the *content* of one's speech, but rather its damaging *effects*.[6]

---

[6] Here, regulating the effects of conduct differ markedly from cases where the content of one's expression is penalized. See, e.g., Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n, 584 U.S. ___, 2018 WL 2465172, at **22, 27 (June 4, 2018) (Thomas, J., concurring) (comparing a "parade," held out as a peculiarly expressive act justifying strict scrutiny, with cases where conduct is regulated

14

See Malecek, 804 S.E.2d at 598 ("If the defendant's actions deprived a married person of the love and affection of his or her spouse, the State will impose liability regardless of what the defendant actually said or did."). Defendant's affair—and therefore her expression—would not have been actionable had Plaintiff consented to them. As a result, any infringement on Defendant's freedom of speech is incidental.

Nor is this cause of action greater than essential to further the State's interest. Absent sexual conduct, alienation of affection requires *wrongful and malicious* acts made *without privilege* that bring about the resulting alienation of love and affection. Vonfeldt v. Grapsy, 1:16CV1179, 2017 WL 590337, at *6 (M.D.N.C. Feb. 14, 2017), report and recommendation adopted, 1:16CV1179, 2017 WL 1187841 (M.D.N.C. Mar. 30, 2017) (quoting Sebastian v. Kluttz, 170 S.E.2d 104, 106 (N.C. Ct. App. 1969)); see also, Heller, 696 S.E.2d at 860; Litchfield v. Cox, 146 S.E.2d 641, 641 (N.C. 1966); Nunn, 574 S.E.2d 35, 42. Defendant herself points out an additional limitation: the cause of action is not available if a married couple has physically separated with the intent of remaining separated permanently. N.C. GEN. STAT. §52-13(a). Thus the State has tailored the statute to address the essential interest at issue.

Defendant challenges the constitutionality of alienation of affection claims on the basis of a facial challenge, where "a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the law's plainly legitimate sweep." (Doc. No. 16 at 9) (quoting United States v. Stevens,

---

"regardless of its expressive component," which receive the more lenient O'Brien treatment).

15

559 U.S. 460, 473 (2010)). In emphasizing the overbreadth of alienation of affection, Defendant hypothesizes scenarios such as when parents alienate the affections of their child toward a spouse or when a co-worker convinces a fellow colleague to leave a spouse by merely voicing their factually-correct opinions. (Doc. No. 12 at 13–14) (citing Heller v. Somdahl, 696 S.E.2d 857 (N.C. Ct. App. 2010)).

Defendant mischaracterizes the breadth of alienation of affection claims. Parties are not liable under this cause of action for advice given to another about a marriage if that advice is in good faith and on a reasonable belief of that person's welfare. See Bishop v. Glazener, 96 S.E.2d 870, 874 (N.C. 1957) (assessing the potential liability of a parent giving advice to their child). The facts in Heller v. Somdahl do not dictate a contrary result. In that case, the plaintiff claimed that the defendant contributed to the loss of plaintiff's affections by "encouraging, through intoxication, coercion, and persuasion, plaintiff's wife … to engage in an adulterous relationship with [another]." Heller, 696 S.E.2d 857, 860. The case hardly encompasses "innocuous speech imploring one to leave a marriage" that Defendant proposes could incur liability. (Doc. No. 16 at 11).

Nor does Snyder v. Phelps, 562 U.S. 443 (2011), help Defendant. There, the Supreme Court upheld the Westboro Church's freedom of speech when they picketed a soldier's funeral. (Doc. No. 16 at 10–11). The speech in Snyder differs from the speech here, because "[t]he 'content' of Westboro's signs plainly relates to broad issues of interest to society at large, rather than matters of 'purely private concern.'" Snyder, 562 U.S. at 452. "[W]here matters of purely private significance are at issue,

16

First Amendment protections are often less rigorous. Id. (quoting Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 56 (1988)). The private communication between Megan France and Ryan Ammarell does not relate to broad issues of interest to society and, as interpreted in accordance with the Supreme Court in Snyder, is not afforded the same protection.[7]

For the reasons stated above, the Court agrees with and adopts the recommendation of the Magistrate Judge. An alienation of affection claim does not violate Defendant's First Amendment right to freedom of speech. The Supreme Court has recognized that "every civil and criminal remedy imposes some conceivable burden on First Amendment protected activities." Arcara v. Cloud Books, Inc., 478 U.S. 697, 706 (1986). As mentioned in the M&R, the restrictions applied by a claim for alienation of affection are no greater than necessary for the protection of the fundamental right of marriage. (Doc. Nos. 14–15).

---

[7] Defendant also cites Snyder for the assertion that juries are ill equipped to consider what constitutes "malice." (Doc. No. 16 at 10–11). Defendant makes too much of Snyder. It dealt with a jury assessing the *content* of one's speech. There, the Supreme Court found that asking the jury to assess the outrageousness of Westboro's picketing posed a real danger that the jury would not be neutral to the content of the speech. 562 U.S. at 458. Here, the jury assesses maliciousness not of the speaker's message, but of the speaker's intention or culpable state, a quintessential jury task. For example juries assess malice as an element of civil causes of action in cases of malicious prosecution, Nguyen v. Burgerbusters, Inc., 642 S.E.2d 502, 506 (N.C. Ct. App. 2007), libel, Lewis v. Rapp, 725 S.E.2d 597, 601 (N.C. Ct. App. 2012), exceptions to official immunity, Wilcox v. City of Asheville, 730 S.E.2d 226, 230 (N.C. Ct. App. 2012), and awarding punitive damages, N.C. GEN. STAT. §1D-15(a)(2); and in criminal matters such as second-degree murder, State v. Lail, 795 S.E.2d 401, 407 (N.C. Ct. App. 2016), review denied, 796 S.E.2d 927 (N.C. 2017).

2. Freedom of Association

Defendant's final objection to the Magistrate Judge's M&R claims that alienation of affection violates her freedom of association. (Doc. No. 16 at 11).

States cannot sanction individuals solely because of association with others. NAACP v. Claiborne Hardware Co., 458 U.S. 886, 918–19 (1982). Courts have interpreted the First Amendment to provide "associational rights" to protect those enumerated First Amendment rights, such as religion, press, assembly, and speech. See Roberts, 468 U.S. at 622 ("An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed."). Freedom of association is not absolute, however. Like freedom of speech, "[i]nfringements on [the freedom of association] may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." Id. at 623.

Defendant relies on the Supreme Court case Robert v. U.S. Jaycees, 468 U.S. 609 (1984), for the proposition that adulterous affairs are protected relationships because they are intimate, selective, and tend to carry important significance to one's identity. (Doc. No. 16 at 12). Roberts, however, does not provide Defendant support. The case does not address private, intimate extramarital conduct but rather admission into a nonprofit organization as a public accommodation. 468 U.S. at 626–29. Furthermore, the rule of Roberts proves that the State has the power to regulate

18

narrowly the association between people in the wake of a compelling state interest. See VonFeldt v. Grapsy, 1:16CV1179, 2017 WL 1187841, at *1 (M.D.N.C. Mar. 30, 2017) ("Contrary to Defendant's argument, the case did not hold that adulterous relationships are 'clearly protected' under the First Amendment."). As discussed above, alienation of affection does not actually target the content of Defendant's expression, but the result of Defendant's actions. As the North Carolina Court of Appeals held, "[t]here are countless ways for one to associate with a married person, form meaningful relationships, and even share feelings and intimacy without incurring liability for alienation of affection or criminal conversation." Malecek, 804 S.E.2d at 598.

## IV. CONCLUSION

The people of the state of North Carolina, through their elected representatives, have enacted legislative protections surrounding the institution of marriage and injury to a victim spouse in the form of alienation of affection and criminal conversation torts. The wisdom of those laws is challenged by the Defendant. But this is the wrong forum. Changes if they are to come should come through the voice of the people not a bang of the gavel.

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 15), is **ADOPTED**; and
2. Defendants' Motion to Dismiss, (Doc. No. 11), is **DENIED**.

Signed: June 11, 2018

Robert J. Conrad, Jr.
United States District Judge

19